# IN THE UNITED STATES DISTRICT COURT

## For the Southern District of Texas

| | | |
|---|---|---|
| Peter B. HUTTON | : | |
| and | : | |
| Cristen CLINE, | : | |
| Plaintiffs | : | Civil Action No.: _____ |
| v. | : | |
| PARKER-HANNIFIN CORPORATION, | : | **JURY TRIAL REQUESTED** |
| John R. GRECO, an individual, | : | |
| and | : | |
| Thomas L. WILLIAMS, an individual, | : | |
| Defendants | : | |

## COMPLAINT

## <u>THE PARTIES</u>

1. Plaintiff, Peter B. Hutton ("Hutton") is an individual, a citizen of Canada, with permanent resident status in the United States, domiciled in the State of Texas and residing in Houston, Texas.

2. Plaintiff, Cristen Cline ("Cline") is an individual, a citizen of Texas, residing in Houston, Texas.

3. Hutton and Cline were owners of shares of Phoenix Precision Ltd. ("Phoenix"), a company located in Alberta, Canada.

4.  Hutton and Cline were owners of shares of 840501 Alberta Ltd. ("Alberta"), a company located in Alberta, Canada, which held the property at which Phoenix conducted its manufacturing operations on behalf of Phoenix.

5.  Defendant, Parker-Hannifin Corporation ("Parker USA") is a publicly traded corporation formed and existing under the laws of the state of Ohio, having a principal office at 6035 Parkland Boulevard in Cleveland, Ohio 44124.

6.  Defendant, Thomas L. Williams ("Williams"), is an individual, a citizen of Ohio, currently residing at 6511 Blackfriars Lane, Hudson, Ohio, 44236.

7.  Defendant, John R. Greco ("Greco"), is an individual, a citizen of Ohio, currently residing at 4137 Laubert Road, Atwater, Ohio, 44201.


JURISDICTION

8.  Jurisdiction of this court is proper under 28 U.S.C. § 1332 (a) (2) and/or (a) (3), as between citizens of different states; or citizens of different states, and in which a subject of a foreign state is an additional party, and the subject matter in dispute, exclusive of interest and costs exceeds $75,000.00. Jurisdiction over Parker USA, and the individual defendants Williams and Greco, is under the Texas long arm statute (*Tex. Civ. Prac. & Rem. Code* §17.042), as Parker USA does business within this jurisdiction, not only through its wholly owned subsidiary, PGI International Ltd. ("PGI"), a manufacturer and seller of instrumentation valves and manifolds, but also generally conducts sales of its products to customers within this jurisdiction; and Parker USA has recruited, with the aid of defendants, Williams and Greco, and contracted with Hutton and Cline, to be its employees, and additionally entered into further contracts with each of plaintiffs, Hutton

and Cline, which employment and further contracts were each negotiated, at least in part, and intended to be performed in this jurisdiction, and which further contracts expressly provide for the application of Texas law and irrevocably waives any objection to venue, *forum non-conveniens,* and jurisdiction over the parties. Jurisdiction as to non-resident defendants, Williams and Greco, is further proper under the Texas long arm statute (*Tex. Civ. Prac. & Rem. Code* §17.042 (1)) in that Williams and/or Greco had recruited and induced plaintiffs, Hutton and/or Cline, to sell assets of Phoenix and Alberta and enter into employment agreements with Parker USA and into further contracts with Parker USA, which contracts were negotiated in, at least in part, and to be performed within this jurisdiction; as well as through material misrepresentations to induce Hutton and Cline to sell assets of Phoenix and Alberta and rely upon the employment and other contracts with Parker USA as a source of post-sale income, which representations were false when the representations were made, Williams and/or Greco either knew they were false or made the representations recklessly without any knowledge of the truth as a positive assertion, Williams and/or Greco made the representations with the intent that plaintiffs, or either of them, should act upon the representations, and Hutton and/or Cline did rely upon the misrepresentations and were damaged. Jurisdiction over defendants Greco and Williams is also additionally based on the torts of libel, slander and defamation against Hutton and Cline, committed in whole or in part in the state of Texas under the Texas long arm statute (*Tex. Civ. Prac. & Rem. Code* §17.042 (2)).

<u>BACKGROUND FACTS</u>

9.  Plaintiff Hutton has more than twenty-five years of experience in the design, manufacture and sale of instrumentation valves and manifolds for the flow control industries and is a prolific inventor and had numerous United States and foreign patents, some of which were assigned to Phoenix.

10. In January 2012, Parker USA approached the Plaintiffs with the intent to acquire the ongoing business of Phoenix, the principal business of which is the design, manufacture and sale of instrumentation valves and manifolds, by purchasing all the shares and/or assets of Phoenix, including Phoenix's manufacturing facility.

11. On May 8, 2013, Phoenix  and Parker USA entered into an agreement, signed by defendant Greco, which stated, *inter alia*¸ "[T]he transaction would also be contingent upon the negotiation and execution of a definitive asset purchase agreement and a multi-year employment agreement with you, each including customary representations, warranties, covenants and indemnities, approval by Parker [USA's] Chairman, CEO and President, Don Washkewicz, and the appropriate approvals by the Business [Phoenix] and its owners, and receipt of any necessary government approvals and clearances. Parker has received the approval of its executive management to proceed with its evaluation of the transaction."

12. Subsequently, in 2013, Phoenix gave Notice under 35 U.S.C § 287 of infringement of one or more of its United States Patents to PGI, a Parker USA affiliate.

13. At the time of the Notice of infringement, Phoenix and PGI together were the principal providers in the United States of products known in the industry as "Stabilized Taps."

14. On November 19, 2013, Williams, in the presence of Greco and other Parker USA attendees at a meeting of Parker USA Worldwide Managers, confirmed to Hutton and Cline, or each of them, his approval of, and agreement with, the terms of Parker USA's purchase of Phoenix, expressly including the employment agreements and the additional purchase price through payment of non-compete payments, Hutton and Cline, or each of them, had been advised by Greco and other representatives of Parker USA that Williams' approval was, pursuant to Parker USA's corporate governance processes and procedures, a prerequisite to the transaction being consummated.

15. Hutton and Cline, or each of them, had also been advised by Greco and other representatives of Parker USA that Williams had directed an earlier unsuccessful attempt to acquire PGI, so he [Williams] had particular interest in the PGI and Phoenix transactions.

16. Subsequently, Parker USA, through its wholly-owned Canadian affiliate, Parker Hannifin Canada, entered into an Asset Purchase Agreement ("APA") with Phoenix, which contemplated, *inter alia,* an assignment of Phoenix's United States Patents, including those upon which infringement was charged against PGI, to Parker Canada (collectively referred to herein with Parker USA as "Parker USA").

17. The APA was scheduled to close on January 6, 2014, but Parker postponed the closing until January 7, 2014.

18. On January 7, 2014, Parker USA issued a written offer of employment to Hutton, which was accepted by Hutton on the same day, Hutton relied on Parker USA's offer of employment in agreeing to sell the assets of Phoenix and Alberta.

19. That offer and acceptance created a valid and enforceable employment contract ("Hutton Employment Agreement"), and is attached as Exhibit 1, the entire contents of which are expressly incorporated by reference as though fully set forth herein. Hutton began his employment for Parker USA, but has not been compensated under the terms of the Employment Agreement.

20. As part of the inducement to enter into the APA, Parker USA offered to employ Cline, and Cline accepted Parker USA's employment offer, Cline relied on Parker USA's offer to employ her in agreeing to sell the assets of Phoenix and Alberta ("Cline Employment").

21. Parker USA's offer to Cline was reconfirmed and ratified by Greco on February 17, 18 and 19, 2014, and Cline performed services for Parker USA, but has not been compensated.

22. On January 7, 2014, Parker USA and Hutton also entered into a non-competition agreement which provided that Parker USA would pay to Hutton, as additional purchase price for the assets of Phoenix and Alberta, an annual sum beginning February 2015. Hutton has fulfilled his obligations of non-competition to date, but has received no payments from Parker USA under the non-competition contract.

23. The non-competition contract with Hutton (hereinafter "Hutton Noncompetition Agreement") is attached as Exhibit 2, the entire contents of which are expressly incorporated by reference as though fully set forth herein.

24. On January 7, 2014, Parker USA and Cline entered into a non-competition contract which provided that Parker USA would pay to Cline, as additional purchase price for the assets of Phoenix and Alberta, an annual sum beginning in February 2015. Cline has

fulfilled her obligations of non-competition to date, but has received no payments from Parker USA under the non-competition contract.

25. The non-competition contract with Cline (hereinafter "Cline Noncompetition Agreement") is attached as Exhibit 3, the entire contents of which are expressly incorporated by reference as though fully set forth herein.

26. On and prior to January 7, 2014, Parker USA, by itself and through Parker Canada, for its sole convenience, also entered into agreements with Phoenix respecting post-closing adjustments to the purchase price, including balance sheet adjustments, tax adjustments and currency conversion adjustments (these agreements are collectively referred to with the Employment Agreements and the Noncompetition Agreements as the "Closing Agreements"; and the plaintiffs, and each of them, relied upon the Closing Agreements in agreeing to the sale of assets of Phoenix and Alberta to Parker USA.

27. Parker USA has breached these Closing Agreements, and each and every agreement that it entered into with plaintiffs, Phoenix and Alberta relating to the purchase of the assets of Phoenix and Alberta to Parker USA, including the APA.


## COUNT 1

### (BREACH OF EMPLOYMENT AGREEMENTS)

28. Plaintiffs re-plead paragraphs 1-27 as though fully set forth herein.

29. Hutton began his duties as an employee of Parker USA pursuant to the Hutton Employment Agreement dated January 7, 2014.

30. Cline began her duties as an employee of Parker USA on January 7, 2014.

31. In early March 2014, as part of Hutton's employment, Hutton attended a meeting with Parker USA at PGI in this jurisdiction.

32. In early March 2014, in furtherance of Cline's employment, Cline attended meetings with Parker USA in this jurisdiction.

33. The purpose of the meeting with Parker USA at PGI was, among other things, to strategize marketing of a specific manifold to one of Parker's primary customers for the manifold.

34. At the meeting in the presence of Hutton's co-workers, Greco berated Hutton, propositioning that Hutton's proposal for marketing the manifold to the customer was coercive and stormed out of the meeting without hearing or understanding of any part of the proposal.

35. Hutton was the original and sole inventor of the specific manifold, which had been awarded a United States patent and had originally been licensed by Hutton, through his prior company, to both PGI and the specific customer; and Hutton has had extensive patent, licensing, marketing and sales experience with this particular customer for many years prior to his employment with Parker USA.

36. On March 19, 2914, Parker advised Hutton that it was terminating the Hutton Employment Agreement.

37. Hutton has received no compensation or benefits due from Parker USA under the Employment Agreement, or reimbursement for his out of pocket expenses.

38. Parker USA refuses to pay any compensation or reimbursement to Hutton under the Hutton Employment Agreement, including the termination payments due in accordance with the terms of the Hutton Employment Agreement.

39. Parker USA is in breach of the terms of the Hutton Employment Agreement, and refuses to cure the breach, after notice to do so; and as a direct result of the breach of the contract by Parker USA, Hutton has suffered damage and is entitled to damages in an amount to be proven at trial, but not less than Two Million Five Hundred Thousand ($2,500,000.00), as well as his attorneys' fees.

40. Cline performed services for Parker USA commencing January 7, 2014 continuously and uninterrupted until August 2014.

41. In August 2014, Parker USA advised Cline that it was constructively terminating her services for Parker USA.

42. Cline has received no compensation, benefits, or reimbursement for out of pocket expenses due from Parker USA for services rendered to Parker USA from January 7, 2014 until her constructive discharge in August 2014.

43. Parker USA refuses to pay any compensation or reimbursement, including any benefits to Cline for her services to Parker USA.

44. Parker USA is in breach of the terms of Cline's employment with Parker USA and refuses to cure the breach, after notice to do so; and as a direct result of the breach of the contract by Parker USA, Cline has suffered monetary damage, as well as damages for intentional infliction of emotional distress and is entitled to monetary damages as proven at trial, but not less than *quantum meruit,* and compensatory and punitive damages for emotional distress, as well as her attorneys' fees.

<u>COUNT 2</u>

(FAILURE OF CONSIDERATIONAND/OR BREACH OF THE

CLINE NONCOMPETITION AGREEMENT)

45. Plaintiff, Cline, re-pleads paragraphs 1-44 as though fully set forth herein.

46. As additional consideration for the purchase price of Phoenix, Parker USA offered to pay Cline $500,000 in the form of a noncompetition agreement.

47. Cline accepted Parker USA's offer and Cline has performed her obligations under the Cline Noncompetition Agreement with Parker USA, but has not been compensated under the terms of that agreement, and as a direct result of the breach of the contract by Parker USA, Cline has suffered damage.

48. Parker USA has breached its promise to pay Cline for Cline's performance of her obligations of non-competition, whereby Cline requests specific performance of the Cline Agreement, and damages, including pre- and post-judgment interest.

49. Parker USA is in breach of the terms of the Cline Noncompetition Agreement and refuses to cure the breach, after notice to do so; and as a direct result of the breach of the contract by Parker USA, Cline has suffered monetary damage, as well as damages for intentional infliction of emotional distress and is entitled to monetary damages as proven at trial, and compensatory and punitive damages for emotional distress, as well as interest, costs and her attorney's fees.

50. Parker USA is in breach of the terms of the terms of the Cline Noncompetition Agreement, and refuses to cure the breach, after notice to do so; and Cline is entitled to damages, interest, costs and attorneys' fees.

COUNT 3

(FAILURE OF CONSIDERATIONAND/OR BREACH OF THE

HUTTON NONCOMPETITION AGREEMENT)

51. Plaintiff, Hutton, re-pleads paragraphs 1-50 as though fully set forth herein.

52. As additional consideration for the purchase price of Phoenix, Parker USA offered to pay Hutton $500,000 in the form of a noncompetition agreement.

53. Hutton accepted Parker USA's offer and Hutton has performed his obligations under the Hutton Noncompetition Agreement contract with Parker USA, but has not been compensated under the terms of that agreement, and as a direct result of the breach of the contract by Parker USA, Hutton has suffered damage and, as Parker USA refuses to cure the breach, after notice to do so, Hutton is entitled to damages, pre-and post-judgment interest as well as his costs and attorneys' fees.

54. Parker USA has breached its promise to pay Hutton for Hutton's performance of his obligations of non-competition, whereby Hutton requests specific performance of the payment obligations of the Hutton Noncompetition Agreement contract,  and/or in the alternative, a declaration that Hutton's Noncompetition Agreement is of no further force and effect, and past damages.

COUNT 4

(MISREPRESENTATION BY PARKER USA, WILLIAMS AND/OR GRECO)

55. Plaintiffs re-plead paragraphs 1-54 as though fully set forth herein.

56. Plaintiffs, as shareholders of Phoenix and Alberta, would have, individually and severally, been the beneficiaries of their salaries and benefits as well as of any profits and

other compensation received by Phoenix and Alberta by virtue of its manufacturing, sales, rents and damages/royalties for patent infringement by others, including Parker USA and/or Parker USA's affiliate PGI.

57. Parker USA (through Parker Canada), Greco and/or Williams sought to negate the employee compensation, noncompetition compensation and benefits, profits, rents and other compensation due to plaintiffs by inducing them, and/or each of them, to convey the assets of Phoenix and Alberta to Parker USA, through its designee Parker Canada, including its patents, by misrepresentation of Parker USA's intent to provide "multi-year employment agreements" and additional purchase price through non-compete payments to plaintiffs.

58. Even when the multi-year Employment Agreement was reduced to a writing, signed by the parties, Hutton and Parker USA, the Employment Agreement is referred to by Greco and/or Williams as an "alleged employment agreement."

59. Greco and/or Williams never obtained, nor intended to obtain, the approval of Parker's Chairman, CEO and President for the "multi-year employment agreement" for plaintiffs, or either of them, or for the additional purchase price payments in the form of the Hutton and/or Cline Noncompetition agreements.

60. Parker USA, Greco and/or Williams never obtained, nor sought to obtain "any necessary government approvals and clearances," even though Phoenix and PGI were substantially the only manufacturers, and sellers in the United States, of the Stabilized Taps, and the asset purchase from Phoenix would tend to reduce competition in the United States for this product, sold primarily to the oil and gas industries.

61. Parker USA, Greco and/or Williams never intended to honor the "multi-year employment agreement" for plaintiffs, or either of them, the agreements for the payment of the additional purchase price payments through non-compete payments, or any of the other Closing Agreements.

62. Greco and/or Williams made the representations that the transaction, i.e., the purchase of Phoenix, would not go forward without the approval of Parker's Chairman, CEO and President, including the "multi-year employment agreement," the additional purchase price paid as non-compete payments, and the Closing Agreements, as well as obtaining the necessary government approvals and clearances, with the knowledge that such representations were false when the representations were made, or made the representations recklessly without any knowledge of the truth as a positive assertion.

63. Greco and/or Williams made the representations that Parker USA would employ Hutton and Cline with the knowledge that such representations were false when the representations were made, or made the representations recklessly without any knowledge of the truth as a positive assertion.

64. Parker USA, Greco and/or Williams made the representations that Parker USA would pay Hutton and Cline additional purchase price through non-compete payments with the knowledge that such representation was false when the representations were made, or made the representations recklessly without any knowledge of the truth as a positive assertion.

65. Greco and/or Williams made the representations that the transaction had the approval of Parker's Chairman, CEO and President, including the "multi-year employment agreement" and additional purchase price payable through non-compete payments with

the knowledge that such representations were false when the representations were made, or made the representations recklessly without any knowledge of the truth as a positive assertion.

66. Greco and/or Williams made the representations that the transaction would go forward only as a result of obtaining the necessary government approvals and clearances, even though they knew that the purchase of the assets of Phoenix would tend to monopolize the availability of sale of Stabilized Taps within the United States and reduce competition in the field of Stabilized Taps for the oil and gas industries.

67. Parker USA, Greco and/or Williams represented to plaintiffs that Parker USA maintained a stringent corporate commitment to ethical business practices, including providing plaintiffs with copies of Parker USA's Global Code of Business Conduct which "guides our [Parker USA] commitment to act honestly, with integrity, and to do what is right," including expressly "keeping our [Parker USA] promises," and represented to plaintiffs that they, and each of them, could rely on the strict adherence by Parker USA (including Parker Canada) representatives to ethical business practices in respect of the purchase and sale of the Phoenix and Alberta assets and the promises made that the transaction would go forward only with the approvals of Parker USA's Chairman, CEO and President, and any necessary government approvals or clearances.

68. Parker USA, Greco and/or Williams made the representations that Parker representatives would strictly adhere to ethical business practices with the knowledge that such representations were false when the representations were made, or made the representations recklessly without any knowledge of the truth as a positive assertion.

69. Hutton and Cline, and each of them, relied upon the misrepresentations that Parker representatives would strictly adhere to ethical business practices and also act in accordance with Parker USA's Global Code of Business Conduct, a copy of which is attached as Exhibit 4, with respect to the transactions.

70. Hutton and Cline and each of them relied upon the misrepresentations that the transaction would go forward only with the approval of Parker USA's Chairman, CEO and President as well as the necessary government approvals and clearances.

71. Hutton and Cline have since learned that Parker USA, through its affiliate, Parker Canada, had no intention of paying any more than the monies allocated in the APA for the portion of the purchase price of the assets of Phoenix and Alberta payable at the closing date of the transaction, which monies are still held captive by and in escrow under the direction of Parker USA, and that Parker USA had no intention of paying either Hutton or Cline under their Noncompetition Agreements, nor under their respective Employment Agreements.

72. Greco and/or Williams knew that Parker USA had given no authority to pay anything more than the monies allocated for that portion of the purchase price of Phoenix and Alberta payable on the closing date of the transaction, but induced plaintiffs and each of them, as shareholders of Phoenix and Alberta, to provide approval for the sale of the assets of Phoenix and Alberta, through the misrepresentations that plaintiffs would receive additional purchase price in the form of non-competition agreements, as well as employment contracts with Parker USA.

73. Parker USA, Greco and/or Williams knew that the purchase of the assets of Phoenix would tend to monopolize the sale of Stabilized Taps in the United States and tend to

lessen competition of these Stabilized Taps for the oil and gas industries, and therefore did not seek the necessary government approvals and clearances.

74. Plaintiffs would not have entered into the agreements with Parker USA nor have agreed to the sale of the assets of Phoenix or Alberta but for the misrepresentations of Parker USA, Greco and/or Williams.

75. Parker USA, Greco and/or Williams intended that plaintiffs, or either of them, should act upon the misrepresentations, and Hutton and/or Cline did rely upon the misrepresentations to their detriment and were damaged.


<u>COUNT 5</u>

(TORTIOUS INTERFERENCE WITH VALID CONTRACTS)

76. Plaintiffs re-plead paragraphs 1-75 as though fully set forth herein.

77. Plaintiff Hutton entered into a valid and binding Employment Agreement with Parker USA for a period of five years commencing January 7, 2014.

78. Plaintiff Hutton entered into a valid and binding Noncompetition Agreement with Parker USA for a period of five years commencing January 7, 2014.

79. Defendants, Greco and/or Williams, had actual knowledge of the Hutton Employment Agreement and, acting outside the scope of his employment, did interfere with that contract of employment by creating and circulating false and untrue assertions about Hutton, including propositions of Hutton "threatening customers" of Parker USA; of Hutton "attempting to sell to Parker USA something he had already sold to someone else;" of Hutton "communicating with third party patent owners" advising of potential infringement by Parker USA and of Hutton "seeking a license under third party patents,"

and similar false and malicious assertions in this jurisdiction and elsewhere in order to create an hostile and intolerable work environment in Parker USA for its employee Hutton and diminish his reputation, good will and standing both in Parker USA and in the instrumentation valve and manifold industry and slander him personally through malice and for their own interest and by directing that payments due pursuant to the Employment, Noncompetition and escrow funds be withheld in order to force Hutton to acquiesce to a lesser purchase price for the assets of Phoenix and Alberta.

80. Greco fabricated an imaginary problem of patent infringement of Phoenix's Stabilized Tap despite long-standing sales of Phoenix' Stabilized Taps without any claim of infringement by any patent owner, had his subordinates and staff support the concept of this imaginary problem, and refused alternates to alleviate any purported risk to Parker USA from any plausible perception that there was a problem with the Stabilized Taps (which included an offer of a cash bond indemnifying Parker USA against infringement); ascribing this imaginary problem to be the genesis of the need to convert the share purchase of Phoenix to an asset purchase to further compromise and disparage the integrity and reputation of Hutton within Parker USA, and between Hutton's co-workers and subordinates, and his reputation in the instrumentation valve industry in general; Greco and/or Williams mandated that production of the said patented Stabilized Tap be discontinued and when advised of the cost impacts of this initiative, Greco invented a reason to terminate all exchange with Hutton by having a human resource attorney communicate with Hutton, including having the Hutton Employment Agreement thereafter described as an "an alleged employment agreement," further

disparaging Hutton's reputation within Parker USA, with his subordinates and co-workers and within the instrumentation valve industry.

81. Hutton specifically requested, in writing, that Williams intercede in Greco's actions, but Williams turned a blind eye to Hutton's request, instead referring the matter back to Greco for resolution, thereby ratifying Greco's actions. Greco and/or Williams actions were done in order to avoid/diminish the obligations of Parker USA under its Employment Agreement with Hutton by causing Hutton to resign or by attempting to fabricate a basis for a "for cause" termination of the Hutton Employment Agreement by Parker USA.

82. Greco's and/or Williams' actions were done with animus in order to harm Hutton and to avoid/diminish his culpability and responsibility in obtaining the requisite approval of the obligations of Parker USA under its Employment Agreement with Hutton.

83. Greco and/or Williams knew of the Hutton Noncompetition Agreement and directed that payments due to Hutton under the Hutton Noncompetition Agreement be withheld.

84. Greco's and/or Williams actions were done with animus in order to harm Hutton and to avoid/diminish culpability and responsibility in failing to obtain the requisite approvals of the obligations of Parker USA under the Hutton Noncompetition Agreement.

85. Plaintiff Cline entered into a valid and binding Employment Agreement with Parker USA commencing January 7, 2014.

86. Plaintiff Cline entered into a valid and binding Noncompetition Agreement with Parker USA for a period of five years commencing January 7, 2014.

87. Defendants Greco and/or Williams had actual knowledge of the Cline Employment agreement but did, acting outside the scope of his employment, tortuously interfere with

that contract of employment by creating and circulating false and untrue assertions about Cline, including propositions of Cline, who was responsible for Phoenix's financial records, communicated with a third party, BeneFACT Consulting Group, that "the 2013 finances for Phoenix are a bit of a mess" resulting in demands upon Cline for "personal guarantees," the claim that Cline "did not institute Parker USA's policy on vacation pay" which later became a charge that Cline was the cause of Parker's erroneous accruing of vacation pay on employee overtime" a "policy" later rescinded by Parker USA, and similar false and malicious assertions in this jurisdiction and elsewhere in order to create a hostile and intolerable work environment in Parker USA for its employee Cline and diminish her reputation, good will and standing in Parker USA and slander her personally through malice and for their own interest.

88. The foregoing actions were done in order to avoid/diminish the obligations of Parker USA under its Employment Agreement with Cline by causing Cline to resign or by attempting to fabricate a basis for a "for cause" termination of the Cline Employment Agreement with Parker USA.

89. Greco's and/or Williams' actions were done with animus in order to harm Cline and to avoid/diminish their culpability and responsibility in failing to obtain the requisite approvals of the obligations of Parker USA under its Employment Agreement with Cline.

90. Greco and/or Williams directed that payments due to Cline under the Cline Noncompetition Agreement be withheld.

91. Greco's and/or Williams' actions were done with animus in order to harm Cline and to avoid/diminish his culpability and responsibility in failing to obtain the requisite approvals of the obligations of Parker USA under the Cline Noncompetition Agreement.

92. Greco's and/or Williams' actions were done with animus in order to harm Hutton and/or Cline and to avoid/diminish his culpability and responsibility in failing to obtain the requisite approvals of the obligations of Parker USA under the Closing Agreements.

93. Greco and/or Williams actions were done with animus in order to harm Cline and to avoid/diminish his culpability and responsibility in failing to obtain the requisite approvals of the obligations of Parker USA under its Employment Agreement with Cline.

94. Cline and Hutton, or each of them, is entitled to compensatory damages in an amount to be proven at trial and punitive damages in an amount to discourage repetition of these actions by Greco and/or Williams, and well as his/her costs and attorneys' fees.

## COUNT 6

### (LIBEL, SLANDER AND DEFAMATION)

95. Plaintiffs re-plead paragraphs 1-94 as though fully set forth herein.

96. Defendants, Greco and/or Williams, acting outside the scope of his employment, created and circulated false and untrue assertions of about Hutton, including propositions of Hutton "threatening customers" of Parker USA; of Hutton "attempting to sell to Parker USA something he had already sold to someone else;" of Hutton "communicating with third party patent owners" advising of potential infringement by Parker USA and of Hutton "seeking a license under third party patents" and similar false and malicious assertions in this jurisdiction and elsewhere in order to diminish and damage the reputation of Hutton among his co-workers and persons in the industry in which Hutton had devoted a substantial portion of his working career.

97. Greco's and/or Williams' did repeat and circulate these false and untrue assertions throughout Parker USA in this jurisdiction and elsewhere, including Hutton's co-workers, management of Parker USA and affiliated companies, human relations, legal department and elsewhere.

98. The creation, repeating, and/or circulation of these false and untrue assertions and any of them did damage the reputation of Hutton.

99. The creation, repeating, and/or circulation of these false and untrue assertions and any of them was done through the malice of Greco and/or Williams to conceal their malfeasance in failing to secure the approval of Parker's Chairman, CEO and President to employ Hutton and to pay additional purchase price for the assets of Phoenix and Alberta to Hutton and Cline through noncompetition payments and Closing Agreement payments.

100. Parker USA, Greco and/or Williams effected a campaign of disparaging each of/ both Hutton and Cline by the creation, repeating, and/or circulation of false and untrue assertions, in this jurisdiction and elsewhere, including Parker USA/Greco/Williams disparaging the validity of patents for products designed by Hutton and disparaging Phoenix's products, business practices and records, specifically including financial records, and similar false and malicious assertions thereby damaging the reputation of Hutton and Cline, which was done through the malice of Greco and/or Williams in order to diminish the reputation, good will and standing within Parker USA and its subsidiaries and among persons in the industry in which each of them had devoted a substantial portion of his/her working career, and did slander each of them personally through malice and for their own interest to conceal their malfeasance in failing to secure the approval of Parker USA's Chairman, CEO and President to employ Hutton and Cline and to pay each

of them additional purchase price for the assets of Phoenix and Alberta through noncompetition payments and pursuant to the Closing Agreements and  also to prevent Hutton and Cline, or either of them, from working in, or initiating new business enterprises, in the industry, and, as a result, Hutton's and Cline's ability to work in the industry has been irreparable harmed.

101. Hutton and Cline, or each of them, are entitled to compensatory damages in an amount to be proven at trial and punitive damages in an amount to discourage repetition of these actions by Parker USA, Greco and/or Williams, and each of their costs and attorneys' fees.


## COUNT 7
### (TORT OF BAD FAITH DEALING)

102. Plaintiffs replead paragraphs 1-101 as though fully set forth herein.

103. Parker USA, Greco and Williams had a duty, express or implied, to act in good faith and to deal honestly and genuinely with the Plaintiffs.

104. Parker USA also has adopted a Global Code of Conduct, a copy of which is attached as Exhibit 4, binding Greco and Williams to act in accordance therewith.

105. Plaintiffs, and each of them, relied upon the honesty and good faith of Parker USA, Greco and Williams and upon Parker USA's Global Code of Conduct, and Greco and Williams adherence thereto, in entering into the Employment Agreements, Noncompetition Agreements, Closing Agreements and APA.

106. Plaintiffs each have performed all of his and/or her obligations under the Employment Agreements, Noncompetition Agreements, Closing Agreements and APA.

107. All conditions required for Parker USA's performance under the Employment Agreements, Noncompetition Agreements, Closing Agreements and APA have occurred.

108. Defendant Parker USA has no reasonable basis for denying or delaying payment of the benefits of the Employment Agreements, Noncompetition Agreements, Closing Agreements and APA to Plaintiffs.

109. In breach of its duty to act in good faith and deal fairly, Parker USA did not deal honestly or fairly with the Plaintiffs and upon the closing of the APA, Parker USA embarked upon a concerted and consistent course of conduct designed to frustrate all of its obligations, specifically including its closing obligations and post-closing obligations to Plaintiffs.

110. Parker USA, Greco and Williams acted in violation of Parker USA's Global Code of Conduct and failed to adhere to other Parker USA ethical guidelines and policies of ethical business practices published by Parker USA worldwide.

111. Hutton and Cline were each was harmed by Parker USA's conduct.

112. Hutton and Cline, or each of them, are entitled to compensatory damages in an amount to be proven at trial and punitive damages in an amount to discourage repetition of these actions by Parker USA, and each of their attorneys' fees.

113. Monetary damages alone will not be sufficient to prevent repetition of Parker USA's conduct, therefore Hutton and Cline, or each of them, are entitled to an injunction compelling Parker USA,  and its affiliates, agents, officers and employees to adhere to its published Code(s) of Conduct.

<u>PRAYER FOR RELIEF</u>

Whereby Plaintiffs, individually, pray for the following relief:

1.  Hutton seeks specific performance of the Hutton Employment Agreement including, *inter alia*, the payment of the termination payments due under the provisions of the Hutton Employment Agreement by Parker USA to Hutton.

2.  Hutton seeks a Declaration from the court that the Hutton Noncompetition Agreement lacks consideration from Parker USA, and that therefore the non-competition contract is rescinded and of no future effect;

3.  In the alternative, plaintiff Hutton seeks damages from Parker USA payable to Hutton in the amount proven at trial but not less than US$2,500,000.00 for damages under the breach of promise to offer a multi-year employment agreement; and damages as proven at trial but not less than US $500,000.00 under the Hutton Noncompetition Agreement contract;

4.  Cline seeks compensatory and exemplary damages for the breach of the promise of multi-year employment agreement in the amount to be proven at trial, and compensatory and punitive damages for the intentional infliction of emotional distress;

5.  Cline seeks specific performance of the Cline Noncompetition Agreement, an injunction compelling specific performance by Parker USA of the Cline Noncompetition agreement or alternatively, acceleration of the noncompetition payment provisions, and damages as proven at trial but not less than US $500,000.00 under the Cline Non-competition Agreement contract;

6.  Plaintiffs Hutton and Cline individually and jointly seek compensatory and exemplary damages for the damages caused by the misrepresentations of Parker USA, Williams and/or Greco in purporting to offer a multi-year employment contract in order to acquire Hutton and/or Cline's approval for the sale of the assets of Phoenix and Alberta, in the amount to be proven at trial;

7.  Plaintiffs Hutton and Cline individually and jointly, seek compensatory and exemplary damages for the damages caused by the misrepresentations of Parker USA, Williams and/or Greco in purporting to offer  non-compete payments as part of the consideration for the sale of the assets of Phoenix and Alberta in the amount to be proven at trial;

8.  Plaintiffs Hutton and Cline individually and jointly seek compensatory and exemplary damages for the damages caused by the misrepresentations of Parker USA, Williams and/or Greco in purporting to offer  non-compete payments in order to acquire Hutton and/or Cline's approval for the sale of the assets of Phoenix and Alberta in the amount to be proven at trial;

9.  Plaintiffs Hutton and Cline individually and jointly seek compensatory and exemplary damages for the damages caused by the misrepresentations of Parker USA, Williams and/or Greco in purporting to act ethically in accordance with Parker USA's ethical business practices as represented and with Parker USA's Global Code of Business Conduct;

10. Plaintiffs Hutton and Cline individually and jointly seek the benefits that would have been theirs had they not been induced by the misrepresentations of Parker USA, Greco and/or Williams to convey the assets of Phoenix and Alberta to Parker Canada.

11. Hutton seeks compensatory and exemplary damages for the tortious interference by Greco and/or Williams with his rights under the Employment Agreement and the Noncompetition agreement with Parker USA in the amount to be proven at trial;

12. Cline seeks compensatory and exemplary damages for the tortious interference by Greco and/or Williams with her rights with respect to employment by Parker USA in the amount to be proven at trial;

13. Plaintiff Hutton seeks compensatory and exemplary damages by reason of the slander, libel and/or defamation of Parker USA, Greco and/or Williams to his reputation;

14. An injunction compelling Parker USA, Greco and Williams to adhere to Parker USA Global Code of Conduct (attached as Exhibit 4).

15. Plaintiff Cline seeks compensatory and exemplary damages by reason of the slander, libel and/or defamation of Parker USA, Greco and/or Williams to her reputation;

16. Each of Cline's and Hutton's attorney's fees and costs incurred in this action;

17. Pre- and post-judgment interest; and,

18. Such other relief as this court deems proper and just.

Attachments: EXHIBITS 1-4

NOVAK DRUCE CONNOLLY BOVE + QUIGG LLP

 By: /s/ James A. Glenn
James A. Glenn
1000 Louisiana Street, 53rd Floor
Houston, Texas 77002
Tel.: 713.571.3400
Fax.: 713.456.2836
Texas Bar No.:24032357
Southern District ID No.: 826704

## <u>REQUEST FOR JURY TRIAL</u>

Plaintiffs request a JURY TRIAL for all issues so triable.

NOVAK DRUCE CONNOLLY BOVE +
QUIGG LLP

 By: /s/ James A. Glenn                      /
James Glenn
1000 Louisiana Street, 53rd Floor
Houston, Texas 77002
Tel.: 713.571.3400
Fax.: 713.456.2836
Texas Bar No.:24032357
Southern District ID No.: 826704