United States District Court
Southern District of Texas
**ENTERED**
August 04, 2016
David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| PETER B. HUTTON & CRISTEN CLINE, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-15-3759 |
| | § | |
| PARKER-HANNIFIN CORPORATION, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the court is defendant Parker-Hannifin Corporation's ("Parker-Hannifin")

motion to disqualify plaintiffs' counsel.  Dkt. 17.  Having considered the motion, response, reply,

other relevant documents, and the applicable law, the court is of the opinion that the motion should

be GRANTED.

**I. BACKGROUND**

**A.  The Asset Purchase Agreement**

Plaintiffs Peter B. Hutton ("Hutton") and Cristen Cline ("Cline") (collectively, "Plaintiffs")

were shareholders in the Canadian company Phoenix Precision Ltd. ("Phoenix").  Dkt. 1 at 1.

Phoenix's principal business "is the design, manufacture, and sale of instrumentation valves and

manifolds." *Id.* at 4.  In January 2012, Parker-Hannifin approached Plaintiffs about the possibility

of acquiring Phoenix. *Id.*  On May 8, 2013, the parties exchanged preliminary documentation

regarding the acquisition, which indicated that the transaction was contingent on the future

negotiation and execution of a definitive asset purchase agreement and multi-year employment

agreements for Plaintiffs. *Id.*  On November 21, 2013, Plaintiffs signed the Asset Purchase

Agreement ("APA"), which transferred almost all of Phoenix's assets to Parker-Hannifin's Canadian

subsidiary, Parker-Hannifin Canada.  Dkt. 17, Ex. 1 at 1.  In particular, the APA involved the transfer of significant patent rights from Phoenix to Parker-Hannifin Canada.  *Id.*; Dkt. 1 at 5.  The transaction closed on January 7, 2014.  Dkt. 17, Ex. 1 at 1; Dkt. 1 at 5.

On the same day, Plaintiffs allegedly accepted offers of employment and entered into non-compete agreements with Parker-Hannifin.  Dkt. 1 at 5–6.  Plaintiffs contend that these additional agreements were extended to induce them to enter into the APA and transfer Phoenix's patent rights. *Id.* at 5–6.  Plaintiffs further allege that they provided services pursuant to these agreements, yet Parker-Hannifin failed to pay them.  *Id.* at 6–9.  Moreover, Plaintiffs contend that Parker-Hannifin prematurely terminated their employment agreements within several months, even though the parties had specifically discussed "multi-year" employment relationships.  *Id.* at 8–9.  On December 31, 2015, Plaintiffs filed this lawsuit against Parker-Hannifin and two individual Parker-Hannifin employees, Thomas Williams and John Greco, raising claims for breach of contract, misrepresentation, tortious interference with contract, defamation, and bad faith dealing.  Dkt. 1.

**B.  Representation History**

Over the past twenty years, Plaintiffs and their closely-held companies have been represented in various matters by attorney Thomas Pavelko ("Pavelko"), who is not an attorney of record in this case. Dkt. 18 at 4.  Pavelko did not represent Phoenix in the negotiation of the APA or the employment and non-compete agreements that are at issue in this litigation.  Dkt. 18, Ex. 1 at 2. When Pavelko began representing Plaintiffs, he was employed at Stevens, Davis, Miller & Mosher, LLP.  *Id.*  On February 1, 2008, Pavelko became a partner at Novak Druce + Quigg LLP (now Novak Druce Connolly Bove and Quigg, LLP) ("Novak Druce").  *Id.*

On June 3, 2013, Pavelko sent a patent infringement notice on behalf of Phoenix to PGI, Inc. ("PGI").  Dkt. 17 at 3; Dkt. 18 at 4 n.4.  Pavelko was subsequently informed that PGI had been

acquired by Parker-Hannifin, who was in the process of negotiating the acquisition of Phoenix under the APA.  Dkt. 18 at 4 n.4.  Pavelko did not pursue further action against PGI.  *Id.*

As noted above, the APA closed on January 7, 2014, and the agreement involved the transfer of significant patent rights from Phoenix to Parker-Hannifin Canada.  Dkt. 18 at 4.  After the execution of the APA, Plaintiffs asked Pavelko if he would assist in transferring the patent matters from Phoenix to Parker-Hannifin Canada.  *Id.* at 4–5.  To that end, Pavelko provided legal services to Parker-Hannifin that consisted largely of "maintaining the [patent] properties in a pending state" by monitoring procedural deadlines associated with the patents.  Dkt. 18, Ex. 1 at 3.

In addition to Pavelko's work, several other Novak Druce attorneys worked for Parker-Hannifin on unrelated intellectual property matters.  Novak Druce was responsible for patent prosecution and preparation for Parker-Hannifin's Chomerics Division until 2014.  Dkt. 17, Ex. 1 at 2.  Novak Druce also represented Parker-Hannifin in other patent litigation and settlement negotiations in 2013.  *Id.*

At the time this lawsuit was filed, Plaintiffs were represented by Novak Druce.  Dkt. 18 at 2.  After the filing of this lawsuit, several Novak Druce attorneys, including Pavelko, joined Polsinelli PC ("Polsinelli").  *Id.* at 2.  William R. Towns ("Towns"), Plaintiffs' attorney of record in this case, was among the attorneys who left Novak Druce for Polsinelli.  *Id.*  Towns has no personal history of representing Parker-Hannifin.  *Id.* at 6.

On May 27, 2016, Parker-Hannifin filed a motion to disqualify Plaintiffs' counsel based on an alleged conflict of interest created by Novak Druce's prior representation of Parker-Hannifin.  Dkt. 17.  On June 17, 2016, Plaintiffs filed a response to the motion to disqualify.  Dkt. 18.  On June 24, 2016, Parker-Hannifin filed a reply.  Dkt. 19.  The motion is now ripe for disposition.

## II. LEGAL STANDARD

The Fifth Circuit is "sensitive to preventing conflicts of interest." *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 299 (5th Cir. 2009) (quoting *In re Am. Airlines, Inc.*, 972 F.2d 605, 611 (5th Cir. 1992)). The district court therefore has an obligation to take measures to prevent unethical conduct in any proceeding before it. *Id.* at 299–300. However, disqualification of an attorney is a severe penalty that deprives a party of the right to be represented by an attorney of his or her choice. *Id.* at 300. Therefore, the sanction of disqualification "must not be imposed cavalierly," and the court may disqualify an attorney only after "careful consideration." *Id.* (quoting *F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1313 (5th Cir. 1995)). Further, the court must not apply the disqualification rules "mechanically"—rather, the court considers "[a]ll of the facts particular to [the] case . . . in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights." *Id.* at 300 (alterations in original) (quoting *U.S. Fire. Ins.*, 50 F.3d at 1314); *see also Islander E. Rental Program v. Ferguson*, 917 F. Supp. 504, 508 (S.D. Tex. 1996) (Kent, J.) ("Given the nature and operation of a modern legal practice, an absolute prohibition against an attorney accepting representation against a former client is neither practical nor laudable.").

"Motions to disqualify are substantive motions. Therefore, they are decided under federal law." *U.S. Fire Ins. Co.*, 50 F.3d at 1312. There are several sets of rules that may be relevant to a motion to disqualify: the American Bar Association ("ABA") Model Rules, the local rules adopted by the district court, and the ethics rules of the state. *John Crane Prod. Sols., Inc. v. R2R & D, LLC*, No. 3:11-CV-3237-D, 2012 WL 3453696, at *2 (N.D. Tex. Aug. 14, 2012). The Southern District of Texas local rules state that "the minimum standard of practice shall be the Texas Disciplinary Rules of Professional Conduct." S.D. Tex. L.R. App. A, R. 1A. The Fifth Circuit has noted that the ABA Model Rules and the Texas Disciplinary Rules of Professional Conduct are essentially identical

4

regarding conflicts of interest due to an attorney's prior representation of the opposing party. *In re Am. Airlines, Inc.*, 972 F.2d at 615 n.2 ("ABA Rule 1.9 is identical to Texas Rule 1.09 in all important respects."). Accordingly, the court may properly focus its analysis on the Texas Disciplinary Rules of Professional Conduct. *See id.* at 610 (noting that the court would center its discussion on the Texas Rules because they do not differ materially from the relevant ABA rules).

Texas Disciplinary Rule of Professional Conduct 1.09 states:

> (a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:
>> (1) in which such other person questions the validity of the lawyer's services or work product for the former client;
>> (2) if the representation in reasonable probability will involve a violation of Rule 1.05; or
>> (3) if it is the same or a substantially related matter.
> (b) Except to the extent authorized by Rule 1.10, when lawyers are or have become members of or associated with a firm, none of them shall knowingly represent a client if any one of them practicing alone would be prohibited from doing so by paragraph (a).
> (c) When the association of a lawyer with a firm has terminated, the lawyers who were then associated with that lawyer shall not knowingly represent a client if the lawyer whose association with that firm has terminated would be prohibited from doing so by paragraph (a)(1) or if the representation in reasonable probability will involve a violation of Rule 1.05.

Tex. Disciplinary Rules Prof'l Conduct 1.09. "Rule 1.09(a)(2) incorporates Rule 1.05, which prohibits a lawyer's use of confidential information obtained from a former client to that former client's disadvantage." *In re Am. Airlines, Inc.*, 972 F.2d at 615. Notably, Rule 1.09 explicitly provides that one attorney's conflict of interest will be imputed to other attorneys associated with the same firm. Tex. Disciplinary Rules Prof'l Conduct 1.09(b); *see also Dean Witter Reynolds, Inc. v. Clements, O'Neill, Pierce & Nickens, L.L.P.*, No. CIV.A. H-99-1882, 2000 WL 36098499, at *7 n.2 (S.D. Tex. Sept. 8, 2000) (Harmon, J.) ("Under the Texas Disciplinary Rules, if one lawyer at

a firm would be prohibited from representing a person adverse to a former client, then the entire firm is likewise prohibited.").

Rule 1.09 provides "two district grounds for disqualification" that are relevant here. *Id.* The court must disqualify the lawyer if either (1) "the current matter is substantially related to the matters in which the lawyer has represented the former client" or (2) "the current representation in reasonable probability will involve the use of confidential information" against the former client. *Id.* The party seeking disqualification bears the burden of proving that disqualification is necessary. *John Crane Prods. Sols., Inc.*, 2012 WL 3453696, at *2. The court will discuss each potential ground for disqualification in turn.

## III. ANALYSIS

### A. Substantial Relationship

#### 1. Legal Framework

A party may disqualify opposing counsel by establishing two elements: (1) "an actual attorney–client relationship between the moving party and the attorney he seeks to disqualify" and (2) "a substantial relationship between the subject matter of the former and present representations." *In re Am. Airlines*, 972 F.2d at 614. Plaintiffs have not disputed that Novak Druce had an actual attorney–client relationship with Parker-Hannifin and that Novak Druce's potential conflict of interest would be imputed to Towns, Plaintiffs' attorney of record.[1] Therefore, the only question before the court is whether a "substantial relationship" exists between the subject matter of the representation in this case and Novak Druce's prior representation of Parker-Hannifin. "A

---

[1] Plaintiffs have noted generally that "under certain circumstances involving a departed attorney an imputed disqualification can be removed." Dkt. 18 at 8. However, Plaintiffs have not argued that any circumstances are present in this case that would make imputation improper.

6

substantial relationship exists when the prior representation concerns the particular practices and procedures which are the subject matter of [the] suit." *Id.* at 625 (quoting *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1032 (5th Cir. Unit B June 1981), *abrogated in part on other grounds by Gibbs v. Paluk*, 742 F.2d 181 (5th Cir. 1984)).  "[A] substantial relationship may be found only after the moving party delineates with specificity the subject matters, issues and causes of action common to the prior and current representations and the court engages in a painstaking analysis of the facts and precise application of precedent." *Id.* (quoting *Duncan*, 646 F.2d at 614).  However, in order to be substantially related, the prior and current matters need not be so similar that a lawyer's continued involvement threatens to taint the trial, nor does the subject matter of the prior action need to be "relevant" in an evidentiary sense to the present action.  *John Crane Prod. Sols.*, 2012 WL 3453696, at *2 (citing *In re Am. Airlines*, 972 F.2d at 616; *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1341, 1346 (5th Cir. Unit A Oct. 1981), *abrogated in part on other grounds by Gibbs*, 742 F.2d 181).  Rather, the prior matters "need only be akin to the present action in a way reasonable persons would understand as important to the issues involved." *Id.* (quoting *In re Corrugated Container Antitrust Litig.*, 659 F.2d at 1346).  Once the moving party has established that the prior matters are substantially related to the present case, the court irrebuttably presumes that relevant confidential information was disclosed during the former period of representation, and disqualification is categorically required.  *In re Am. Airlines*, 972 F.2d at 614 (citing *Duncan*, 646 F.2d at 1028; *In re Corrugated Container Antitrust Litig.*, 659 F.2d at 1347).

### 2.  Parties' Arguments

Parker-Hannifin argues that a substantial relationship exists between this case and Novak Druce's prior representation of Parker-Hannifin. Dkt. 17 at 11.  Parker-Hannifin notes that Novak

Druce has a history of representing Parker-Hannifin in patent prosecution and litigation and thereby gained "expansive knowledge of Parker-Hannifin's strategy for patent prosecution and litigation, as well as its tolerance for risks in litigation." *Id.* Parker-Hannifin argues that the complaint places the subject of Novak Druce's prior patent representation in issue because it states that (1) Plaintiffs assigned patents from Phoenix to Parker-Hannifin under the APA and (2) as a result of that assignment, Plaintiffs relinquished the benefits of the patents, including potential royalties and patent infringement damages. *Id.* at 11–12. Parker-Hannifin emphasizes that Pavelko worked on the patents that were transferred in the APA. *Id.* at 12.

Plaintiffs argue that the complaint solely concerns claims for monies owed to Plaintiffs arising from Parker-Hannifin's breach of Plaintiffs' employment and non-compete agreements, material misrepresentations made to induce Plaintiffs to enter into those agreements, tortious interference with those agreements by the individual defendants, defamation of Plaintiffs, and breach of the duty of good faith and honest dealing. Dkt. 18 at 11. Plaintiffs point out that "[t]here is no allegation related to patent infringement or damages related thereto." *Id.* Plaintiffs argue that a "substantial relationship" requires a very close connection between the prior and current representation and that Parker-Hannifin has failed to identify how this employment contract dispute specifically invokes Novak Druce's prior representation in patent matters. *Id.* at 11–12.

### 3. Analysis

The court agrees with Plaintiffs that there is no substantial relationship between Novak Druce's prior representation of Parker-Hannifin and the current case. Because of the severity of disqualification, the "substantial relationship" test requires a high degree of connection between the present and prior representations. As noted above, the moving party has the burden of identifying "with specificity the subject matters, issues and causes of action common to the prior and current

8

representations." *In re Am. Airlines, Inc.*, 972 F.2d at 614. Here, Novak Druce's prior representation of Parker-Hannifin related exclusively to patent and other intellectual property matters. This case, by contrast, involves causes of action relating to the breakdown of the alleged employment and non-compete agreements between Plaintiffs and Parker-Hannifin. Therefore, there is no parity between the "subject matter, issues and causes of action" of the previous patent representation and the current representation related to the employment and non-compete agreements. As Plaintiffs have pointed out, this case involves no causes of action based in patent law. Novak Druce's prior patent representation and knowledge of Parker-Hannifin's "strategy for patent prosecution and litigation" are insufficient to establish a connection to this dispute.

Parker-Hannifin correctly points out that Plaintiffs' claims are connected to the APA, which involved the transfer of significant patent rights from Phoenix to Parker-Hannifin. In transferring these rights, Plaintiffs lost the benefits associated with owning the patents. Therefore, if Plaintiffs were to succeed on their misrepresentation claim, the damages calculation for that claim will involve a valuation of the benefits Plaintiffs lost by entering into the APA, including the value of the patents. *See* Dkt. 1 at 25 (Complaint) (seeking the "benefits that would have been theirs" had they not been induced into the APA by Parker-Hannifin's misrepresentations); *id.* at 11–12 (explaining that Plaintiffs would have been the beneficiaries of salaries and other compensation received by Phoenix, including damages and royalties for patent infringement, had they not entered into the APA). However, the court finds that this connection is not sufficient to establish a "substantial relationship" between the prior and current representations, given that both involve entirely different causes of action. Specifically, the misrepresentation claim is clearly a distinct "cause of action" from those that would have been at issue in patent litigation matters. Therefore, the court finds that the claims in this case are not sufficiently related to Novak Druce's prior patent representation to establish a

"substantial relationship."  Further, Novak Druce's potential understanding of Parker-Hannifin's "tolerance for risks in litigation" is too vague a connection to satisfy the "specificity" required by the substantial relationship test.

A review of case law applying the substantial relationship test supports the court's conclusion.  In *John Crane Production Solutions*, plaintiff moved to disqualify the Matthews Firm in a trademark dispute over fiberglass rods.  2012 WL 3453696, at *1.  The Matthews Firm had represented defendants in intellectual property matters, including the prosecution and registration of a trademark, "FIBEROD," with the U.S. Patent and Trademark Office ("PTO").  *Id.*  Plaintiff subsequently acquired the defendants' company, including the FIBEROD mark.  *Id.*  After the acquisition, plaintiff retained the Matthews Firm to perform various legal services, including intellectual property work.  *Id.*  The defendants subsequently formed another company in the same industry and applied for the trademark "FINALROD."  *Id.*  The plaintiff then brought a trademark infringement suit, alleging that the junior mark FINALROD was confusingly similar to its senior mark FIBEROD.  *Id.*  The defendants hired the Matthews Firm to represent them in the lawsuit.  *Id.* The court granted plaintiff's motion to disqualify.  *Id.* at *8.  The court noted that the Matthews Firm had registered the FIBEROD mark and argued before the PTO that FIBEROD was a non-generic mark that was eligible for registration.  *Id.* at *5.  The court found that it would be required to make a similar determination regarding the strength of the FIBEROD mark.  *Id.* at *6.  The court therefore held that disqualification was necessary because the strength of the FIBEROD mark was at issue in the Matthews Firm's prior and current representations.  *Id.*  However, the court explicitly noted that it would *not* have found a substantial relationship if the two representations had both merely concerned the general area of "intellectual property" or even if the two representations had generally involved the FIBEROD trademark.  *Id.* at *7.  Rather, disqualification was necessary because the

specific issue of the strength of the FIBEROD trademark appeared in both representations.  The *John Crane* case therefore makes clear the high bar associated with finding a "substantial relationship." *See also Dean Witter Reynolds, Inc.*, 2000 WL 36098499, at *9 (disqualifying counsel where "the former and present representations involve essentially the same causes of action, theories of liability, statutes, and factual patterns"); *Texaco, Inc. v. Garcia*, 891 S.W.2d 255, 255–57 (Tex. 1995) (disqualifying plaintiff's counsel in an environmental contamination lawsuit, where plaintiff's counsel had previously represented defendant in 106 cases, including 9 specifically involving environmental contamination).  The case before the court is easily distinguishable from *John Crane*, where an identical issue of law was at stake in both the prior and current representations.  This employment contract dispute, by contrast, does not even involve causes of action in the same general area of law as Novak Druce's prior representation in patent matters.

In *M-I LLC v. Stelly*, plaintiff sued two former employees for misappropriation of trade secrets and violation of non-compete agreements.  No. 4:09-CV-1552, 2010 WL 2196281, at *1 (S.D. Tex. May 26, 2010) (Ellison, J.).  Defendants were represented by BoyarMiller, who had previously represented two entities acquired by plaintiff.  *Id.*  Plaintiff moved to disqualify BoyarMiller on this basis.  *Id.*  Plaintiff argued that BoyarMiller's previous representation touched on employment issues, trade secrets, and misappropriation.  *Id.* at *6.  The court denied the motion to disqualify.  *Id.* at *8.  The court noted that BoyarMiller had no involvement in negotiating the employment contracts at issue in the case.  *Id.* at *6.  Further, the court held that BoyarMiller's vague involvement in "employment issues" and "trade secrets" matters was far too uncertain to support the "extraordinary relief" of disqualification.  *Id.*  The court explained that "any common area of law, writ broadly, will not do.  Although [BoyarMiller's] prior representation did have a point of contact with the broad topic of employment law, the Court does not believe that the prior representation

11

concerned the 'particular practices and procedures which are the subject matter' of this suit." *Id.* (quoting *In re Am. Airlines, Inc.*, 972 F.2d at 622). The court cautioned that the "subject matter" of the representations should not be read overly broadly where an overlap in the representations would require the "severe" sanction of disqualification. *Id.* at *7.

As in *M-I LLC*, Parker-Hannifin has not alleged that Plaintiffs' counsel or his partners had any involvement in negotiating the employment contracts and non-compete agreements at issue in this case. Further, there is no clear overlap between the prior and current representations. As noted above, Novak Druce's prior representation related solely to patent matters, whereas this case is essentially a contract dispute. Therefore, even under a broad reading of the "subject matter" of the prior and current representations, the court finds limited overlap. The only point of connection is the relevance of Phoenix's patents to the calculation of damages on Plaintiffs' misrepresentation claim. As noted above, this connection is not sufficient to establish a "substantial relationship" between the current and prior representations where the causes of action at issue are wholly distinct. Parker-Hannifin has failed to show that the past and present representations involve the same "particular practices and procedures." Accordingly, the court finds that Parker-Hannifin has not met its burden of establishing a substantial relationship between this case and Novak Druce's prior representation of Parker-Hannifin.

## B. Threat of Disclosure of Confidential Information

### 1. Legal Framework

Even where the subject matter of the prior representation and the current action are not substantially related, disqualification may still be warranted. Texas "'Rule 1.09 forbids a lawyer to appear against a former client if the current representation in reasonable probability will involve the use of confidential information' that was provided by the former client." *Dean Witter Reynolds, Inc.*,

2000 WL 36098499, at *10 (quoting *In re Am. Airlines*, 972 F.2d at 615). This "threat of disclosure" test "expand[s] the protections for former clients beyond those afforded by the substantial relationship test." *Id.* Under this test, the moving party must "identify the disclosures it made to [its former attorney] during its former representation and demonstrate that such disclosures are relevant to and jeopardized by [its former attorney's] current representation of the [opposing party]." *Id.* However, the moving party need not "delineate specifically the common subject matter and issues because requiring such detail about confidential disclosures would require [the moving party] to reveal the very information it seeks to protect." *Id.*

### 2. Parties' Arguments

Parker-Hannifin first notes that Pavelko has "refused to turn over possession of some former Phoenix patent files to Parker-Hannifin." Dkt. 17 at 4. Parker-Hannifin argues that these files were assigned to Parker-Hannifin in the APA and therefore are Parker-Hannifin's property. *Id.* at 4–5. Parker-Hannifin contends that these files are relevant to the claims in this case. *Id.* at 9. Parker-Hannifin notes specifically that the Complaint states that Parker-Hannifin "induced" Plaintiffs by misrepresentation to transfer Phoenix's patent rights under the APA, including the right to patent royalties and patent infringement damages. *Id.* at 6; Dkt. 19 at 4–5. Further, Plaintiffs seek the benefits that they would have been entitled to as shareholders of Phoenix, if Parker-Hannifin had not induced Plaintiffs to transfer Phoenix's assets. Dkt. 19 at 4. Parker-Hannifin argues that the files withheld by Pavelko, and other confidential information obtained by Novak Druce during its representation of Parker-Hannifin, will likely be used by Plaintiffs against Parker-Hannifin in violation of Texas Rules 1.09 and 1.05. Dkt. 17 at 10–11. In addition to this privileged information, Parker-Hannifin also notes that Novak Druce attorneys have "unique, non-public insight into how

13

Parker-Hannifin's legal department and business operate, including Parker-Hannifin's tolerance for risk and strategy and tactics for litigation and settlement." *Id.* at 10.

Plaintiffs argue that Parker-Hannifin has failed to specify any information disclosed during Novak Druce's previous representation that will be used to the detriment of Parker-Hannifin in this case. Dkt. 18 at 12–13. Plaintiffs contend that any confidential information contained in the patent files in dispute has no bearing on the claims at issue in this case, which arose after the execution of the APA when Parker-Hannifin failed to adhere to Plaintiffs' employment and non-compete agreements. *Id.* at 13–14. Therefore, Plaintiffs contend that Parker-Hannifin's argument regarding the ownership of certain patent files is a red herring with no application to the disqualification issue. *Id.* at 13.

### 3. Analysis

The court agrees with Parker-Hannifin that there is a reasonable probability that relevant confidential information obtained by Novak Druce during its prior representation of Parker-Hannifin will be used against Parker-Hannifin in this case. In the "prayer for relief" section of Plaintiffs' complaint, Plaintiffs state that they "seek the benefits that would have been theirs had they not been induced by the misrepresentations of Parker USA, Greco and/or Williams to convey the assets of Phoenix and Alberta[2] to Parker Canada." Dkt. 1 at 25. Plaintiffs describe in detail the "benefits" that they would have enjoyed but for Parker-Hannifin's alleged misrepresentations:

> Plaintiffs, as shareholders of Phoenix and Alberta, would have, individually and severally, been the beneficiaries of their salaries and benefits as well as of any profits and other compensation received by Phoenix and Alberta by virtue of its manufacturing, sales, rents and damages/royalties for patent infringement by others, including Parker USA and/or Parker USA's affiliate PGI.

---

[2] Alberta is the company that owned the property on which Phoenix conducted its manufacturing operations. Dkt. 1 at 2.

14

*Id.* at 12.  The complaint clearly indicates that, with respect to their misrepresentation claim, Plaintiffs seek to recover for the value of the potential patent infringement claims that they lost by transferring Phoenix's patents to Parker-Hannifin Canada.  Pavelko was the attorney in charge of these patent files at the time of their assignment from Phoenix to Parker-Hannifin Canada and continued to assist Parker-Hannifin in monitoring procedural deadlines for these patents after the assignment.  Dkt. 18 at 4–5.  Given that Pavelko worked directly with the patent files at issue, there can be no question that Pavelko obtained confidential information regarding the patents.  This information will be directly relevant in calculating the potential damages for Plaintiffs' misrepresentation claim, which will require determinations regarding the value and validity of the potential patent infringement claims associated with the patents.  Therefore, the court finds that there is a reasonable probability that the confidential information obtained during Pavelko's prior representation of Parker-Hannifin, and contained in the files which he still retains, will be used against Parker-Hannifin in this case.

The court in *Islander East Rental Program* faced a similar situation and reached the same conclusion.  In that case, the Islander East Rental Program (IERP), an association of condominium owners, and one individual member of IERP, J. Ray Riley, brought suit against the corporation that administered the condominiums and the corporation's directors.  917 F. Supp at 506.  Plaintiffs asserted that defendants took control of IERP in order to coerce IERP participants into paying a disproportionate share of the expenses of the condominium regime.  *Id.* at 506–07.  Plaintiffs raised many claims, including trademark infringement, conversion, and breach of fiduciary duty.  *Id.* at 507. Defendants raised essentially the same counterclaims against plaintiffs.  *Id.*  Fulbright & Jaworski ("Fulbright") represented defendants in the litigation.  *Id.* at 507.  Fulbright had also previously represented plaintiff Riley in his divorce proceedings.  *Id.*   Riley claimed that he disclosed

confidential financial information to Fulbright during his divorce proceedings that was relevant to the pending litigation. *Id.* For example, one of the central issues in Riley's divorce proceedings was the alleged secreting of assets, including income from IERP. *Id.* at 511. In the divorce proceedings, Riley and Fulbright had engaged in discussions about Riley's condo unit, his participation in and relationship with IERP, and his revenues derived from IERP. *Id.* The court noted that the subject matter of the divorce and the pending action did not appear to be substantially related. *Id.* at 509. However, the court found that confidential information obtained during the divorce proceeding was relevant to defendants' counterclaims in the pending case, including the counterclaim for breach of fiduciary duty and defendants' demand for an accounting of IERP's profits. *Id.* at 512. The court therefore granted plaintiffs' motion to disqualify Fulbright. *Id.* at 514.

Similarly, in this case, there is no clear substantial relationship between Novak Druce's prior representation of Parker-Hannifin in patent matters and the pending dispute regarding the breach of Plaintiffs' employment and non-compete agreements. However, Pavelko gained confidential information about the transferred patents during the previous representation that is directly relevant to the potential value of Plaintiffs' misrepresentation claim in this case. Accordingly, there is a reasonable probability that confidential information from the previous representation will be used against Parker-Hannifin in this case. Therefore, Pavelko must be disqualified from representing Plaintiffs in this case and, by imputation, Polsinelli must be disqualified as well. Tex. Disciplinary Rules Prof'l Conduct 1.09(b). Parker-Hannifin's motion to disqualify is GRANTED.

16

## IV. Conclusion

Parker-Hannifin's motion to disqualify (Dkt. 17) is GRANTED.  All other pending motions are DENIED WITHOUT PREJUDICE to refiling.  Polsinelli is ORDERED to withdraw as counsel for Plaintiffs.  Plaintiffs are ORDERED to retain replacement counsel within 45 days of the date of this order, and this case is STAYED during that period.  At the conclusion of the 45 day period, the court will lift the stay and the parties will be permitted to pursue their claims and defenses and refile any motions.

Signed at Houston, Texas on August 4, 2016.

Gray H. Miller
United States District Judge